1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

NEIGHBORS FOR NOTICE LLC, a
Washington limited liability
company,

                    Plaintiff,

          v.

CITY OF SEATTLE, a municipal
corporation, et al.,

                    Defendants.

C12-2098 TSZ

ORDER

THIS MATTER comes before the Court on the Plaintiff's motion for judgment as

a matter of law, docket no. 10.  The Court has reviewed the motion, opposition, and

reply, and all pleadings related thereto, and now enters the following Order.

I.     **Background**

In 1977, Glenn Rudolph bought the home located at 5501 Kensington Place North

in the Green Lake neighborhood of Seattle.  Complaint at ¶ 1.  The home was situated on

a 5,365 square foot lot in an area that is zoned single family 5,000 ("SF 500").  Id.  In

ORDER - 1

November 2011, Rudolph sold the property to Steele Homes, Inc., a business associated with Seattle developer Dan Duffus (hereinafter "builder").  Id. at ¶ 3.  After purchasing the property, the builder requested an opinion letter from the City of Seattle's Department of Planning and Development ("DPD") concerning "whether a portion of the property at 5501 Kensington Place North in Seattle qualifie[d] for development as a separate building site according to the standards of Seattle's land use code."  Id. at ¶ 4.

Seattle's land use code provides certain exceptions to minimum lot area requirements.  See Seattle Municipal Code ("SMC") § 23.44.010.B.  Until 2012, one of the exceptions that allowed for development of a lot that did not meet the minimum lot area requirements of the underlying zone was for lots established as a separate building site by historic tax records.  Former SMC § 23.44.010.B.1.d (2011); see also Seattle City Ordinance No. 123978, § 2 (2012).

Prior to Rudolph's purchase of 5501 Kensington Place North, the property had included two separate tax parcels, the parcel containing the residence and a separate parcel measuring 1,050 square feet and shaped as a triangle with 28 feet of frontage on the rear alley and no street frontage.  Complaint at ¶ 2.  This separate tax parcel existed from approximately 1939 to 1971, id. at ¶ 4, and was the result of the County's historic practice of maintaining tax records in the form of a ledger in which each portion of a single developed building site was maintained as a separate line in the ledger if the site consisted of portions of multiple platted lots.  DPD Report at 3 (docket no. 10-1).  In the case of 5501 Kensington Place North, the property included portions of Lots 6 and 7,

ORDER - 2

Block 30, Wood's South Division of Green Lake Addition.  Complaint at ¶ 4; DPD

Opinion Letter at 2 (docket no. 11-1).

In response to the builder's request, DPD issued an opinion letter concluding that

"Parcels A and B [of 5501 Kensington Place North] qualify for the historic lot area

exception provided in SMC Section 23.44.101.B.1.d, and may be developed as separate

legal building sites."  DPD Opinion Letter at 2.  The letter also suggested that it would be

possible to achieve a more functional footprint and building location by adjusting the

boundary between the two building sites.  Id.  The builder subsequently acquired a lot

boundary adjustment ("LBA") from DPD that allowed it to convert the property into two

separate building parcels measuring 3,455 square feet (lot A) and 1,910 square feet (lot

B) respectively.  Id. at ¶¶ 6-7.  Under City code, there are five land use permit categories,

denominated as Types I through V.  SMC 23.76.004, Table A.  Both lot determination

decisions and LBA's are a Type 1 "compliance with development standards" permit.  Id.

There is no notice requirement for a Type I permit or for a building permit under the

Seattle Municipal Code.  SMC 23.76.012.A.1, 020.C.1.

The builder sold lot A with the existing home at 5501 Kensington Place North on

March 15, 2012.  Id. at ¶ 12.  On April 12, 2012, the City issued a building permit for Lot

B.  Response at 5 n.25.  Lot B, now addressed 5435 Kensington Place North, was

subsequently developed with a new 1,400 square-foot three-story house.

Complaint at ¶¶ 6, 7, 10.

Plaintiff Neighbors for Notice is a Washington LLC whose members live within

100 feet of the newly constructed home at 5435 Kensington Place North.  Complaint at 1-

ORDER - 3

2.  Plaintiff challenges the City of Seattle's policies that allowed the development of 5435 Kensington Place North without public notice or process.  Plaintiff claims that the lack of public notice concerning the development at 5435 Kensington Place North deprived its members from using Washington's Land Use Petition Act ("LUPA"), RCW 36.70C.005 et seq., to challenge the development because they were unaware of the City's decisions until after the 21 day period for filing an appeal under LUPA had expired.[1]  Id. at ¶¶ 17, 19.  Plaintiff also argues that the development resulted in deprivation of the benefit of SF 500 zoning and in a diminution of property values for surrounding residents.  Id. at ¶ 19.

Plaintiff has now filed a Rule 12(c) motion seeking a ruling from the Court that the Complaint alleges a cognizable property interest that is protected by the guarantee of due process under the Fourteenth Amendment to the United States Constitution.

**II.   <u>Standard</u>**

Under Rule 12(c), "[a]fter pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings."  Fed.R.Civ.P. 12(c).  In considering a rule 12(c) motion, the Court must accept all material allegations of the nonmoving party as true, and construe the pleadings in the light most favorable to the nonmoving party.  <u>Doyle v. Raley's Inc.</u>, 158 F.3d 1012, 1014 (9th Cir. 1998).  A pleading's legal conclusions and inferences will not be deemed admitted, <u>Northern Ind. Gun & Outdoor Shows, Inc. v. City of South Bend</u>, 163 F.3d 499, 452 (7th Cir. 1998), but a Rule 12(c) motion will be granted if the pleadings demonstrate that the moving

---

[1] A LUPA challenge must be brought within 21 days after the issuance of the land use decision.  RCW 36.70.040(3).

ORDER - 4

1  party is entitled to judgment as a matter of law.  Fajardo v. County of Los Angles, 179

2  F.3d 698, 699 (9th Cir. 1999).

3        III.   **Discussion**

4        Plaintiff contends that its members have property rights to which due process and

5  its notice requirements apply, and it seeks a ruling from the Court under Rule 12(c) so

6  holding.  Plaintiff argues that there are three protected property rights at issue in this case:

7  (1) access to LUPA, (2) the benefit of SF 500 zoning, and (3) diminution of property

8  values.  Defendants contend that the Plaintiff does not have standing to bring this lawsuit

9  and that there is no protected property right at issue.

10        1. **Standing**

11        To show constitutional standing, the Plaintiff (1) must have suffered an "injury in

12  fact" which is concrete and particularized and actual or imminent; (2) must demonstrate a

13  "causal connection between the injury and the conduct complained of"; and (3) must

14  show that it is "likely, as opposed to merely speculative, that the injury will be redressed

15  by a favorable decision."  Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-561 (1992)

16  (citations omitted).  Article III standing requirements apply whether an organization

17  asserts standing to sue on its own behalf or on behalf of its members.  Havens Realty

18  Corp. v. Coleman, 455 U.S. 363, 378, 102 S. Ct. 1114, 71 L.Ed.2d 214 (1982).  However,

19  an organization suing on behalf of its members must also allege facts sufficient to show

20  that: (1) its members would otherwise have standing to sue in their own right, (2) the

21  interests it seeks to protect are germane to the organization's purpose, and (3) neither the

22  claim asserted nor the relief requested requires the participation of individual members in

23

1  the lawsuit.  Lujan, 504 U.S. at 560-61.  If a plaintiff does not having standing to sue

2  under Article III, a federal court lacks subject matter jurisdiction and the suit should be

3  dismissed.  See, e.g., Warren v. Fox Family Worldwide, Inc., 328 F.3d 1136, 1140 (9th

4  Cir. 2003) ("[I]f [Plaintiff] lacks standing to assert his federal copyright claims, the

5  district court did not have subject matter jurisdiction and dismissal was appropriate.")

6       In the present case, Defendants contend that the Plaintiff has not established a

7  concrete and particularized injury sufficient to establish standing.  The Court disagrees.

8  Neighbors for Notice has alleged that its members, who all live within 100 feet of 5435

9  Kensington Place North, were deprived of access to state law remedies to challenge the

10  development due to the lack of notice and, as a result, suffered harm.  These allegations

11  constitute a sufficient injury to support Article III standing.

12       **2.  Property Right**

13       In order to establish a Section 1983 claim, a plaintiff must allege that a person

14  acting under color of state law deprived him of the rights, privileges or immunities

15  secured by the Constitution or laws of the United States.  Parratt v. Taylor, 451 U.S. 527,

16  535, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), overruled on other grounds, Daniels v.

17  Williams, 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986).  That the City was acting

18  under color of state law in this case is not disputed.  Rather, the issue is whether, under

19  the second Parratt prong the Plaintiff's members were deprived of property without due

20  process of law.

21       In evaluating the Plaintiff's due process claims, the Court must consider three

22  things.

23

(a) whether a property right has been identified; (b) whether governmental action with respect to that property right amounts to a deprivation; and (c) whether the deprivation, if one be found, was visited upon the plaintiff without due process of law.

Fusco v. State of Connecticut, 815 F.2d 201, 205 (2nd Cir. 1987) (citing Parratt, 451 U.S. at 536-37).  Here, the Plaintiff contends that there are three cognizable property rights at issue: (1) access to LUPA, (2) the benefit of SF 500 zoning, and (3) diminution of property values.

The identification and parameters of what constitutes "property" under the Fourteenth Amendment has evolved over time and encompasses more than tangible physical property.  See Hillside Community Church, S.B.C. v. Olson, 58 P.3d 1021, 1025 (Colo. 2002).  Today, the property safeguarded by the Fourteenth Amendment includes certain circumscribed benefits to which a plaintiff has a "legitimate claim to entitlement." Bd. of Regents v. Roth, 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972).  What constitutes a "legitimate claim of entitlement" is determined not by the Constitution, but largely by state law.  Id.  Generally, once a state has legislatively created a certain entitlement and a person can demonstrate a legitimate claim to that entitlement, then the Fourteenth Amendment can be invoked to ensure that the person is not deprived of her entitlement without due process.  Id.; Hillside, 58 P.3d at 1025.  The issue for the Court in the present case is whether Washington State has created a property right to which the Plaintiff's members have a legitimate claim to entitlement under the circumstances of this case.

1

2          **a.  Access to LUPA**

3          The Parties dispute whether access to LUPA is a cognizable property right

4    protected by the Fourteenth Amendment.  Plaintiff argues that access to LUPA is a

5    property interest protected by the Fourteenth Amendment's due process clause, citing

6    Logan v. Zimmerman Brush Co., 455 U.S. 422, 102 S.Ct. 1148, 71 L.Ed.2d 265 (1982).

7    Defendant contends that access to LUPA is a purely procedural right that does not give

8    rise to an independent property interest, relying on the Second Circuit Court of Appeals

9    decision in Fusco v. State of Connecticut, 815 F.2d 201, cert. denied, 484 U.S. 849, 108

10   S.Ct. 149, 98 L.Ed.2d 105 (1987).  The Court adopts the analysis applied in Fusco and

11   concludes that access to LUPA under the circumstances of this case is a purely

12   procedural right and does not create an independent property interest protected by the

13   Fourteenth Amendment.

14          Property interests "are created and their dimensions are defined by existing rules

15   or understandings that stem from an independent source such as state law."  Loudermill

16   v. Cleveland Board of Edu., 470 U.S. 532, 538, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985).

17   The Supreme Court has held that a state-created cause of action may constitute a

18   protected property interest where a plaintiff seeks access to the courts to protect his

19   property or to redress a grievance.  Logan, 455 U.S. at 429 (citing Societe Internationale

20   v. Rogers, 357 U.S. 197, 78 S.Ct. 1087, 2 L.Ed.2d 1255 (1958)).  Once state law creates a

21   property interest, it cannot be removed without due process, including "constitutionally

22   adequate notice and hearing procedures."  Id.

23

However, the Supreme Court has also held that state procedures do not always create an interest that is subject to due process. For example, in <u>Olim v. Wakinekona</u>, 461 U.S. 238, 250-51, 103 S.Ct. 1741, 75 L.Ed.2d 813 (1983), the Supreme Court held that the state procedures at issue in that case did not create a substantive liberty interest:

> Process is not an end in itself. Its constitutional purpose is to protect a substantive interest to which the individual has a legitimate claim of entitlement. . . . The State may choose to require procedures for reasons other than protection against deprivation of substantive rights, of course, but in making that choice the State does not create an independent substantive right.

In <u>Fusco</u>, the Second Circuit applied this analysis to a state land use law that allowed aggrieved land owners to appeal adverse zoning decisions to the Connecticut Courts, concluding that the statutory right was purely procedural and did not give rise to an independent property interest protected by the Fourteenth Amendment. 815 F.2d 201. <u>Fusco</u> is well reasoned and is remarkably similar to the present case.

In <u>Fusco</u>, the plaintiffs' neighbors applied to the local Planning and Zoning Commission ("PZC") to divide their property into two building lots. <u>Id.</u> at 202-03. The PZC published notice of and held a hearing on the application in accordance with state law. The neighbors subsequently applied for and, following a second public hearing, received a zoning variance. Plaintiffs did not see the notice for or attend either hearing. After the neighbors conveyed the second building site to a third party buyer, the plaintiffs learned of the property division and zoning variance and filed suit under Section 1983. Plaintiffs alleged deprivation of property without due process of law, contending that

ORDER - 9

1   because they were unaware of the subdivision hearing they could not comply with the

2   time constraints on taking an appeal as provided for by state law.  Id. at 204.

3          The Second Circuit affirmed the district court's dismissal of the complaint for

4   failure to state a claim, concluding that the plaintiffs did not have a property interest in

5   the Connecticut statute "which grants statutorily and classically aggrieved persons the

6   right to appeal zoning decisions to the Connecticut courts."  Id. at 205.  In reaching its

7   conclusion, the Court held that the right of abutting landowners to appeal zoning

8   decisions is "purely procedural and does not give rise to an independent [property]

9   interest protected by the Fourteenth Amendment."  Id. at 205-06.

10         Since Fusco was published, other circuit courts, including the Ninth Circuit have

11  applied the same reasoning to hold that some state procedures do not create substantive

12  property rights.  See, e.g., Swartz v. Scruton, 964 F.2d 607, 610 (7th Cir. 1992) (because

13  "[p]rocedural interests under state law are not themselves property rights that will be

14  enforced in the name of the constitution," plaintiff's claim of "entitlement to the

15  process—the 'method'—by which his merit pay raise is determined is not a

16  constitutionally protected property interest"); Dorr v. County of Butte, 795 F.2d 875, 877

17  (9th Cir. 1986) (because "a substantive property right cannot exist exclusively by virtue

18  of a procedural right" failure to provide a probationary employee all procedures provided

19  in state law does "not give rise to a protected property interest").  Plaintiff's position that

20  this Court should decline to follow Fusco and should instead conclude that access to

21  LUPA is a protected property interest under Logan, does not withstand scrutiny.

22

23

ORDER - 10

1    Moreover, the cases on which the Plaintiff relies to support its argument that

2   LUPA creates a constitutionally protected property right are not necessarily at odds with

3   the Court's holding here.  For example, in <u>Asche v. Bloomquist</u> the Washington Court of

4   Appeals concluded that the applicable zoning ordinance could create a property right in

5   the plaintiff's view.  132 Wn. App. 784, 798 (2006) ("The plain language of this

6   ordinance requires that buildings more than 28 feet and less than 35 feet can only be

7   approved if the views of adjacent properties, such as the Asches, are not impaired.  Thus,

8   the Asches have a property right, created by the zoning ordinance, in preventing the

9   [neighbors] from building a structure over 28 feet in height.  And, therefore, procedural

10   due process applies.").  <u>Asche</u> is distinguishable because the Plaintiff in the present case

11   does not allege that its members have a right to anything other than process.  Similarly,

12   <u>Muffett v. City of Yakima</u>, 2011 WL 5417158 (E.D. Wash. Nov. 9, 2011), and <u>Post v.</u>

13   <u>City of Tacoma</u>, 167 Wn.2d 300 (2009), are also distinguishable.  In <u>Muffett</u>, the Court

14   did not consider the substance of the plaintiff's claim, but only concluded that failure to

15   timely appeal under LUPA does not necessarily bar a later-filed claim for violation of due

16   process under Section 1983.  2011 WL 5417158, at *4-5.  In <u>Post v. City of Tacoma</u>, the

17   Washington Supreme Court concluded that Plaintiff had a due process right to challenge

18   the assessment of monetary penalties against him for failure to comply with the local

19   building code.  167 Wn.2d at 313.  There is no corollary penalty assessed against Plaintiff

20   in the present case.

21    In sum, although LUPA provides litigants with the opportunity to challenge local

22   land use decisions, LUPA does not necessarily create a corresponding property interest in

23

ORDER - 11

1  this procedural process.  Under the facts of this case, Plaintiff does not have a clearly

2  established property right to challenge the City of Seattle's issuance of a valid opinion

3  letter and LBA that were in compliance with City Code.  Plaintiff does not have a

4  legitimate entitlement to preventing the builder from developing his property as two

5  building sites where the Seattle Municipal Code so allows.

6          **b.  <u>Single Family Zoning</u>**

7          For the same reasons, the Court concludes that the Plaintiff does not have a

8  property interest in SF 500 zoning.  Although a county may not deprive a property owner

9  of procedural due process by rezoning land that he owns without notice and an

10  opportunity to be heard, <u>Harris v. County of Riverside</u>, 904 F.2d 497, 502-04 (9th Cir.

11  1990), that is not the situation in the present case.  Rather, here the Plaintiff contends that

12  because its members were not notified of proposed changes to a neighboring property

13  that resulted in two nonconforming building sites of less square footage than the

14  overlaying zone, they were deprived of the benefit of SF 500 zoning.  This claim is

15  without merit.  The Seattle Building Code provides for several exceptions to zoned lot

16  size.  <u>See</u> SMC § 23.44.010.B.  These exceptions do not change the overlying zone, but

17  rather allow for "infill" development under limited circumstances.  Plaintiff has cited no

18  case that suggests that neighbors have a property right in preventing "infill" development

19  under these circumstances.

20          In addition, Plaintiff's argument that it has a property interest in SF 500 zoning

21  that is distinct from its alleged property interest in LUPA has no merit.  This is a

22  distinction without a difference.  Plaintiff claims that it has a property interest in access to

23

ORDER - 12

LUPA because its members would have opposed the division of 5501 Kensington Place North into two building sites.  Thus, for all practical purposes, Plaintiff's claim of a property right in access to LUPA and SF 500 zoning is the same claim.

      **c.  <u>Diminution in Property Value</u>**

Plaintiff asserts that the City's approval of the LBA and building permit for 5435 Kensington Place North and the resulting development of that lot in a manner inconsistent with the surrounding SF 500 zone caused its members damage by diminishing the value of their property.  They seek damages as a result.  But Plaintiff does not cite any case holding that diminution in property value caused by governmental action deprives a person of property within the meaning of the Fourteenth Amendment, and several cases have held to the contrary.  <u>See</u> <u>Fusco</u>, 815 F.2d at 205-06 (rejecting plaintiff's argument that the diminution in their property value that would result from development constituted a protected property interest); <u>see also</u> <u>Penn Central Transportation v. City of New York</u>, 438 U.S. 104, 131, 98 S.Ct. 2646, 57 L.Ed.2d 631 (1978) (Where land-use regulations are reasonably related to the promotion of the general welfare, the resulting diminution in property value caused by the regulations, standing alone, cannot establish a "taking.").

**IV.   <u>Conclusion</u>**

Because the Plaintiff has not alleged a cognizable property interest, which is the first element of a Section 1983 claim for deprivation of due process under the Fourteenth Amendment, the Court DENIES the Plaintiff's motion.

ORDER - 13

1    The Plaintiff is hereby directed to show cause within 30 days why this case should

2  not be dismissed for failure to state a claim for the reasons outlined in this Order.

3    Dated this 16th day of September, 2013.

THOMAS S. ZILLY
United States District Judge

ORDER - 14